IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | CRIMINAL INFORMATION |
| | : | NO.:  1:10-CR-317 |
| ROBERT NEGRELLI | : | |

**DEFENDANT ROBERT NEGRELLI'S OBJECTIONS
TO THE FINAL PRESENCE REPORT AND
SENTENCING MEMORANDUM**

Comes now the Defendant, Robert Negrelli, by and through his attorney,

Jerome J. Froelich Jr., and files his objections to the final Presentence Report (the

Report) and a sentencing memorandum.

## I.  Introduction

Defendant Robert Negrelli (Mr. Negrelli), through his counsel, negotiated,

and Mr. Negrelli pled guilty to, the specific and limited charges in the one count

Information in this case charging a violation of 18 U.S.C. §152(3), making false

statements in a  bankruptcy proceedings.  The false statements to which Mr.

Negrelli pled guilty were that:

A.)   He stated he had an income of $81,000 for the period in question

when in fact he had a large income;

B.)   That three unsecured creditors were not listed in his bankruptcy

-1-

petition; and

C.)     That he had made a payment towards his 2004 income taxes when he

had not.

Mr. Negrelli did not plead guilty to tax fraud nor bankruptcy fraud. However, a review of the Report shows that the government is seeking to punish Mr. Negrelli for alleged bankruptcy fraud and/or tax fraud, without the benefit of a trial and without charging him with those allegations.  If the government wished to pursue bankruptcy fraud and/or tax fraud charges, it should have done so and Mr. Negrelli would had the right to have a trial and confront witnesses against him. The government seeking to impose a guideline range sentence on Mr. Negrelli for bankruptcy fraud and/or tax fraud denies Mr. Negrelli his Sixth Amendment rights and his Fifth Amendment right to Due Process.  Further, it is unfair and is not supported by the facts in this case.

A review of the Report shows it contains much irrelevant information and allegations which does not pertain to the false statement charged in the Information.  Some of the information reflected in the Report was obtained from Mr. Negrelli's bankruptcy proceeding and, therefore, does not support a bankruptcy fraud charge.  Some of the allegations are factually inaccurate, while other allegations are vague and not supported by the facts.  Importantly, much of

the allegations upon which the unduly harsh requested sentence of 46 to 57 months, is not related to the limited and specific false statement charge in the Information.  Further, the basis for the increase in the offense level are supportable factually and legally.

Mr. Negrelli, though provided with some information by the government was not present when the government made its presentation to the Probation officer nor did Probation provide to the defense counsel, consistent with its policies, the documents provided to it by the government.

## II.   __Objections to the Final Report__[1]

As set forth in Paragraph 5 of the Report, the alleged offense conduct was determined by a review of the reports of IRS Agent Chavis and interviews with AUSA Erskine and Agent Chavis.  The defense was not provided with the reports pursuant to Probation's regulations.  So, Mr. Negrelli does not have the ability to confront and determine credibility or the basis for that information.  The government did provide defense counsel with certain documents and grand jury testimony.

A review of the alleged offense conduct in the Report shows that a majority of it is not part of the offense to which Mr. Negrelli pled guilty.  Other sections of

---

[1] Counsel incorporates by reference his objections to the draft report.

it are irrelevant and incorrect.

Mr. Negrelli specifically objects to many of the allegations in the Report as not being part of the offense conduct concerning the false statement in the Information.  While the Report may include some of the allegations under 1B1.4, that information should not be part of the "offense conduct".

Counsel objects to paragraph 7 in that it is totally irrelevant, not part of the offense conduct and there is no way to defend against these vague and unspecific allegations.  This is not a tax case and Mr. Negrelli should not have to defend against allegations alleged to occurred up to 15 years ago, and which the statute of limitations has long since run.  The paragraph is totally irrelevant to the conduct in the Information.  Further, it must be remembered that the government stipulated to and agreed to Mr. Negrelli's tax liability in the Bankruptcy Court and, therefore, should be estopped from raising such allegations in this case.

Paragraph 8 is irrelevant.

Paragraph 9 is irrelevant and is not part of the offense conduct.  It contains hearsay and, even if true, is irrelevant to the charges in the Information.

Paragraph 10 is totally irrelevant to the offense conduct or any other matter in this case.  It is not even relevant under §1B1.4.  Section 1B1.4 does not state that all allegations that the government wishes to put into the Report shall be part

of the Report. Further, it is hearsay and also prohibited by Rule 408 of the Rules of Evidence.

Paragraphs 11, 12, 13 and 15 are irrelevant to the offense conduct in this case. For example, that Mr. Negrelli paid for his girlfriends' breast implant in 2003 from the Negrelli Realty account was admitted in the bankruptcy proceedings and is totally irrelevant to the false statements in the Information. The Escalade and how it was purchased is irrelevant and was discussed in the bankruptcy proceeding.

Paragraphs 16 and 17 are irrelevant to the charges in this case. All of the bank accounts and transactions in Paragraph 16 were disclosed by Mr. Negrelli in the bankruptcy proceedings and discussed in detail. Thus, it is irrelevant and not part of any offense conduct. As to paragraph 17, both Mr. Negrelli and Ms. Cox testified about those transactions. Importantly, Ms. Cox was actually operating Negrelli Realty, as she testified to before the Bankruptcy Court. She also invested a considerable amount of money in Negrelli Realty. Counsel noted Ms. Cox's testimony in his objections to the draft of the Report and cites it below. Further, as previously submitted while 1B1.4 may allow information in the Report, such information does not belong in the offense conduct section.

Ms. Cox testified before in the bankruptcy proceeding on October 28, 2005:

| | |
|---|---|
| Question: | When you joined Negrelli Realty in April of 2004, how was the business financially? |
| Answer (Cox): | Horrible. |
| Question: | Why do you say that? |
| Answer (Cox): | Well, as I dove into the business, there was no money.  There were late fees on every single account, insufficient fund fees.  I proceeded to find out that he owed his accountant about $20,000 his attorney $7,000.  I mean he just owed everybody money. |
| Question: | And you took over the company? |
| Answer (Cox): | Yes, pretty much in May.  I managed it. I marketed it.  I created.....you know , got the website up and going in different ways.  I created new signs.  I was the accountant, the bookkeeper.  I did it all.  I still do it all. |

Paragraph 18 is irrelevant and not part of the offense conduct.  It is based on hearsay, which counsel has not seen.  As the Report states Ms. Cox testified about the events at the bankruptcy proceedings.

The allegations in paragraph 19 are totally irrelevant, and not part of the offense conduct.  It is also based on hearsay.  Again, though 1B1.4 may give broad range to what allegations may be put in the Report, but this is not as part of the offense conduct.  None of the information was false statements to the bankruptcy court.

Paragraph 20 is objected to in that it deletes critical information that the Bankruptcy Court, the government and the creditors all knew about Mr. Negrelli's false statements because he had admitted and recanted them prior to his agreed to discharge.  See paragraph 24 of the Report.

Paragraph 22 is irrelevant and the reliance on an interview of Mr. Negrelli's daughter is hearsay.  Counsel has not seen the interview.  Further, Mr. Negrelli testified about these issues in the bankruptcy proceedings.  The statement of Mr. Negrelli about paying his taxes is out of context.  What Mr. Negrelli said, in context, was he want to have his tax debt discharged if that was permissible under the law.  This is not part of any offense conduct and is irrelevant.  As paragraph 14 points out Mr. Negrelli tried to settle his debts with the IRS.  He testified that:

> ....It was always my intention out of profits that I would pay the IRS all the money I owe them.  And then the economy craved and I lost some of my assets,....

Paragraph 23 is irrelevant.

Paragraph 26 is irrelevant, vague and contains no specifics.  There is no evidence that the Bankruptcy Court was unaware of any unreported income/personal expense items, and that this would have effected the Court's decision.  There are no hidden assets.  Importantly, the government agreed to the amount of taxes owed before the Bankruptcy Court.

Paragraph 27 is objected to because there was no loss in this case.  Mr. Negrelli does not know how the numbers in paragraph 27 were arrived at, but they clearly are not assets.

The figures were provided to Probation by the government.  This appears to be a claim for unreported income.  Mr. Negrelli is not charged with tax evasion. Importantly, all the bank accounts set forth in the paragraph were provided to the bankruptcy court and counsel for the creditors and the government.  The government figures do not relate to this case.  For example, the 820 Fox Hollow lease payments were disclosed in the bankruptcy hearing.  Fox Hollow was Mr. Negrelli's office and that of Negrelli Realty, in addition to being his residence. The vacations were disclosed during the bankruptcy proceeding.  None of the above are assets.  Importantly, the IRS and Mr. Negrelli agreed to an amount owed and made it part of the Bankruptcy Court's Order.  The Court should not allow the government to merely place what it claims is unreported income in a Report

concerning specific and limited false statement charge.  This is not a tax case and

the Court should not allow it to become one.  The Court should not have to have a

hearing to  determine what was or was not taxable income.  The reliance on *United*

*States v. Archibald*, 212 Fed. App. 788 (11th Cir. 2006) to support the allegation is

totally misplaced as was shown in the objections in the draft Report and later in

this memorandum.

Paragraphs 33 & 34 are objected to because there is not a factual or legal

foundation for those characteristics.  There is no loss in this case.  The Report

states that $971,246.77, was the amount of assets not reported to the bankruptcy

court.  There is no evidence of such assets.  There are no victims in this case.  The

false statements to which Mr. Negrelli pled guilty had no effect on the amount of

Mr. Negrelli's estate which was to be divided among the creditors.  There were no

hidden assets in this case.  Importantly, Mr. Negrelli had corrected the false

statements and the Bankruptcy Court, the creditors and the government, were

aware of the false statements when Mr. Negrelli's debts were discharged.  In every

case in the Bankruptcy Court where a discharge is granted creditors loose money.

The false statement would have to be one, like in Archibald, that hid existing

assets from the creditors.  That did not happen in this case.  There was no loss in

this case caused by the statements in the Information.  There was no allegation in

the Information of hidden assets.  Loss is not an element of the charges in the

Information.

If the Court finds 2b1.1 is applied in this case the base level would 6.  There

was no loss and, therefore, the only offense characteristic which is applicable in

this case would be 2B1.1(b)(8)(B).[2]   There is no evidence that Mr. Negrelli had

any unreported assets, no less $971,244.77 of assets.  There were no victims.

Specific Offense Characteristics have to be relevant to the charged offense.

Mr. Negrelli disclosed, as did Ms. Cox, to the Bankruptcy Court the transactions

in paragraph 36.  They were not hidden.

### III.   <u>The Factual Background to the Offense</u>[3]

On March 23, 2005, Mr. Negrelli filed a Chapter 7 Bankruptcy Petition (the

Petition) seeking to discharge his debts, including his income tax liabilities.  The

Petition required him to list his secured and unsecured creditors, his assets, and his

income for a certain period of time.  In the Petition he correctly stated his assets

and most of his creditors, with the exception of three unsecured creditors, Sanford

Roth, Chasandra Cosgrove and Brent Williams.  He claimed that his income for

---

[2] 2B1.1(b)(8)(B) would be superfluous if 2B1.1 did not distinguish between bankruptcy fraud and a false statement in a bankruptcy proceeding.

[3] The Offense Section in the Report goes far beyond the actual offense conduct.

the period set forth in the Petition was $81,000 and that he had paid his 2004

taxes.[4]

Since Mr. Negrelli owed federal taxes, not only was there a trustee and

attorney for the trustee, both appointed by the Bankruptcy Court, and attorneys

representing the creditors included in the proceedings, but also attorneys from the

Internal Revenue Department and the Department of Justice and an IRS Agent.

All issued subpoenas to the various bank accounts identified by Mr. Negrelli,

including accounts at Wachovia, ending in 9500; Sun Trust Bank, ending in 3564,

9849 and 9554; and the Cherokee Bank, ending 9-2003, and sought all the records

of business identified by and testified to by Mr. Negrelli.  American Express, bank

records and business records of Ms. Bobbie Cox were also subpoenaed.  Mr.

Negrelli was questioned about these accounts and businesses during the

bankruptcy proceedings.

Mr. Negrelli was deposed on several occasions and he recanted and

explained his false statements during his deposition.  When Mr. Negrelli was

questioned concerning his $81,000 income he readily admitted that the $81,000

was not true and that he just put this number on the Petition.  He testified he did

not know why he put the $81,000 on the Petition.  He admitted he made

_____

[4] Mr. Negrelli later admitted he had not paid those taxes.

considerably more than $81,000.  (Exhibit A pages 62-65) [5]

Further, Mr. Negrelli admitted that he did not list three unsecured creditors,

Mr. Roth, Ms. Cosgrove and Mr. Williams.  For example Mr. Negrelli testified:

> I told him...I said, Sandy (Roth) I've always told you the money I owe
> you I will pay after the bankruptcy.  If you came down here and you
> testify against me, I will not pay you - whatever gets discharged, I
> will not pay you.

Later, in the proceedings, Mr. Negrelli explained:

> Well, the way I interpret the bankruptcy laws, once I list somebody
> and the bankruptcy case is discharged, I don't owe this person the
> money anymore.  If I don't list them, I take a chance of still owing
> them the money if they decide to come after me.  I don't know if that
> says that in here, but that's my belief.  And it may be a wrong belief.

Thus, these creditors would have been in a better position if they had not

been named in the bankruptcy because Mr. Negrelli would have never been able to

discharge the debts.

After the trustee, the attorney for the trustee, the attorneys for the creditors,

and the attorneys for the IRS and the Department of Justice subpoenaed records,

including bank accounts at Sun Trust, Wachovia, and Cherokee, the records of Mr.

Negrelli's businesses, the credit and bank records of his girlfriend, Ms. Cox, and

---

[5] It should be noted that even the government's counsel admitted during the deposition that the question on the Petition concerning income was confusing. (Exhibit A page 63)

had deposed witnesses, including Mr. Negrelli and Ms. Cox, the Bankruptcy Court was prepared to make a final determination in the matter.

Any of the creditors could have objected to the discharge of Mr. Negrelli pursuant to 11 U.S.C. §726, if they believed that Mr. Negrelli had not included assets, committed fraud as to assets, hidden assets, failed to explain any loss of assets or made a false statement which effected the outcome of the proceedings. No creditor, not even the government, made any such objection.  In fact, all agreed to the discharge and that Mr. Negrelli's tax liabilities were not dischargeable by law in a bankruptcy proceedings.  So, on April 14, 2006, after the government and Mr. Negrelli agreed on the amount of taxes owed through 2004, plus interest, the Bankruptcy Court granted the agreed to discharge.  (Exhibit B)

## IV.  **The Guidelines**

The Federal Sentencing Guidelines are advisory and not mandatory.  The Court must look at the guidelines and the factors set forth in 18 U.S.C. §3553 to determine a fair sentence in this case.  *Gall v. United States*, 128 S Ct. 586, 597 (2007).

Pursuant to 1B.1(a)(1) the Court is to determine guideline section "applicable to the offense of conviction".  §1.B1.2 provides that the offense guidelines should be based on the offense conduct charged in the count of the

information to which the defendant entered his plea of guilty.  See *United States v. Aderholt*, 87 F 3d. 740 (5th Cir. 1996)(reversing a guideline sentence which was based on facts outside the count of conviction)

A review of Federal Sentencing Guidelines Manual's Statutory Index, effective as of November 1, 2010, Appendix A, lists three separate guidelines for a 18 U.S.C. §152; Guideline Sections 2B1.1, 2B4.1 and 2J1.3 (See Exhibit C)   The Court is to choose the applicable section based only on the charged conduct *United States v. Jennings*, 991 F. 2d 725 (11th Cir. 1993).

2B.1.1 deals with "basic forms of property offenses" including larceny, theft, embezzlement and fraud.  2B4.1 deals with bribery.  2J1.3 deals with perjury, which based on the conduct would be the most appropriate in this case. Clearly, 2B4.1 is not appropriate.

If the Court finds that 2B1.1 is the most appropriate guideline, the base offense level would be 6, plus 2 levels for the specific offense characteristics under 2B1.1(b)(8), a misrepresentation during a bankruptcy proceeding.[6]  This would lead to a total offense level of 8, minus 2 levels for acceptance, for a total offense level 6, which would be 0 to 6 months.

---

[6] If bankruptcy fraud and a false statements during a bankruptcy proceedings were the same and did not contain different elements there would be no need for 2B1.1(b)(8)

-14-

The false statements of Mr. Negrelli carried no loss in this case because they did not involve the hiding of assets, the statements were recanted and the creditors, the government and the Bankruptcy Court were aware of Mr. Negrelli's recantation before his discharge without objection.

The base Offense Level for 2J1.3, is Level 14.  Minus 2 levels for acceptance of responsibility would be a Level 12, which would be 10 to 16 months.

Mr. Negrelli does admit he willfully made the false statements in the Information.  However, the statements did not concern hiding assets.  There was no legal or factual support for the government seeking a sentence of 46 to 57 months.  The Court should look at the effect the testimony had on the bankruptcy, which was none.  The Bankruptcy Court, and counsel for the creditors and the government, had the testimony of Mr. Negrelli acknowledging the false statements before the agreed to discharge, except the income tax debt which was not dischargeable under the law.

Further, since Mr. Negrelli corrected his false statement during the bankruptcy proceeding, the Court can consider that as evidence that Mr. Negrelli did not intend to defraud the creditors.  *United States v. Kahn*, 472 F 2d. 272 (2nd Cir. 1973)

In *United States v. Saavedra*, 148 F. 3d 1311 (11th Cir. 1998), the defendant was indicted and charged in two counts with possession and conspiracy to possess with intent to distribute cocaine. He pled guilty to the cocaine conspiracy charge. After the plea, the government notified the defendant that it would seek a sentence based on the fact that the indicted offense transpired near a school and the district court sentenced on that basis. The Court reversed, finding that the offense of conviction is defined as the offense charged in the indictment to which the defendant pled guilty. The Court held that if the government wanted the defendant to suffer the penalty of trafficking in drugs near a school, which was not an element of the crime to which he pled guilty, it should have done so. Since the defendant's sentenced was based on a crime for which he was not charged and was not convicted, the sentence was reversed.

Here, the government seeks to punish Mr. Negrelli for a crime, bankruptcy fraud or tax fraud, with which he was not charged and to which he did not plead guilty. Further, there is no evidence that Mr. Negrelli withheld "assets" from the bankruptcy court.

In response to *Saavedra*, the Sentencing Commission passed amendment 592, deleting from application note 3 of §1B1.2, the position that allowed a sentencing court to consider actual conduct that did not constituted an element of

the offense of which the defendant was convicted.  Here, there is not even actual

conduct by which the government seeks to greatly increase Mr. Negrelli sentence,

no less conduct alleged in the Information.

In *United States v. Braxton*, 500 U.S. 344 (1991) the Court, in an Opinion

by Justice Scalia, reversed the defendant's sentence when it was based on facts

outside the elements of the crime to which he pled guilty.  Braxton had been

indicted on three counts; attempting to kill a marshall, assault on a marshall, and

use of a firearm.  He pled guilty to the assault and firearm charges, but was

sentenced as if he had pled guilty to the attempt to kill charge.

In *United States v. Inclema*, 363 F. 3d 1177 (11th Cir. 2004) the court held

that the role of lenity applies to the sentencing guidelines and that the actual crime

to which the defendant plead guilty should control his sentence.

### V.      The Archibald Case

The government relies on *United States v. Archibald*, 212 Fed. App. 788

(11th Cir. 2006) in an attempt to have the Court apply bankruptcy fraud guidelines

to this false statement case.  A review of *Archibald* shows that it is factually and

legally distinguishable from this case.  First, it is no precedent because it is an

unpublished opinion.

A review of the Archibald indictment shows the charges against the

defendant were in count one bankruptcy fraud, in that he <u>concealed assets</u> from his creditors in violation of 18 U.S.C. §152.1(1).  Count two alleged a false statement in violation of §152(2) in that the defendant <u>concealed an asset</u>.  (See Exhibit D) The charges against Mr. Negrelli were a false statement in violation of §152(3). The charges against Mr. Negrelli are totally different from that in the Archibald case in that it was a different section of the statute, §152(3) verses §152(1) and (2).

Archibald was convicted of and sentenced based on his "bankruptcy fraud conviction".  There is also a great factual distinctions in that Archibald concealed and was charged with concealing an asset.  Archibald testified an asset was worth $2,000, when in fact it was worth $4 million.  There is no allegation in the Information that Mr. Negrelli hid any asset.

Also, when the bankruptcy court learned of Archibald's actions, it dismissed his bankruptcy petition.  Here, Mr. Negrelli admitted his false statements and the court granted Mr. Negrelli's bankruptcy petition.  In fact, the government and the creditors did not object but agreed to the discharge.

**A Reasonable Sentence**

18 U.S.C. §553(a), set forth the factors the Court should consider in imposing "a significant sentence, but not greater than necessary".  Those factors are:

1.    The nature and circumstances of the offense and the history and

      character of the defendant.

2.    The need for a sentence that reflects the seriousness of the offense,

      promotes respect for the law, provides just punishment for the

      offense, affords adequate deterrence to criminal conduct, protects the

      public from other crimes by the defendant, and provides for the

      medical care of the defendant.

3.    Consideration of the available sentences

4.    Consideration of the guideline range.

See *United State v. Montgomery*, 165 Fed. Appx. 840, 842 (11th Cir. 2006)

      With the above factors in mind, the following facts should be considered by

the Court.  Mr. Negrelli will be sixty-four years old in March.  He has no prior

criminal record and had been a substantial business man until the real estate

market collapse in 2002.

      Mr. Negrelli pled guilty to false statement to the Bankruptcy Court.  As

shown previously, he did recant those statements during the course of his

bankruptcy.  While this does not exonerate or excuse Mr. Negrelli's conduct, it

certainly can be considered by this Court.  *See: United States v. Kahn*, 472 F. 2d.

272 (2nd Cir. 1973) (recantation is relevant, but not an excuse).  These facts,

-19-

together with Mr. Negrelli's lack of a criminal record, support the conclusion that

he would not violate the law again.

Further, as pointed out in the Report, Mr. Negrelli had attempted on several

occasions to settle his tax liabilities with the United States.  He had hired Williams

Walsh, the former head of the Tax Collections for the State of Georgia, to make an

offer and compromise to the IRS.  The IRS did not accept the offer.  Mr. Negrelli

testified that he intended to pay the IRS, and his creditors, but when the real estate

market collapsed he was unable to do so.

Attached hereto are letters in support of Mr. Negrelli.

E.    David Mayer - concerning Mr. Negrelli participation at St. Thomas Aquinas
      Catholic Church.

F.    Dr. Dipak Vashi, M.D. - concerning Mr. Negrelli's depression.

G.    Reverend Don Nadeau of the Church of the Good Shepherd concerning Mr.
      Negrelli work with the Catholic Church and with the Knights of Columbus.

H.    John Mascia - Retired Vice President of United Parcel Service and a friend
      of Mr. Negrelli.

I.    Collen Sobel of the Small Faith Community of St. Thomas Aquinas
      Catholic Church.

J.    Paul J. Sobel a friend of Mr. Negrelli.

K.      Reverend E. J. LaHouse - Deacon of the Catholic Archdiocese of Atlanta.

L.      Chris Luettgen a friend of Mr. Negrelli.

M.      Kristen Negrelli Hill - Mr. Negrelli's daughter.

N.      Henry G. Woods Jr. - a friend of Mr. Negrelli for 18 years.

O.      Christina Hubbard - a friend of Mr. Negrelli for 17 years.

P.      Dan Mosera - a friend of Mr. Negrelli for 7 years.

Q.      W. Courtney LaFon - a friend of Mr. Negrelli for 20 years.

R.      Joe Lockwood - Mayor of Milton, Georgia

S.      J. Bristow Anderson, Esq. - friend of Mr. Negrelli for 20 years.

T.      Brian Hill - Mr. Negrelli's son-in-law.

These letters demonstrate that Mr. Negrelli has support within the community.  Further, that Mr. Negrelli has been active within his church and community.  He has helped raise money for the Church of the God Shepherd.  The letters also demonstrate that Mr. Negrelli has a deep sense of remorse for his actions.  Importantly, Dr. Vashi, Mr. Negrelli's physician, states that Mr. Negrelli has been suffering from depression since 2002.

All of the above facts, taken together, show that a reasonable sentence for Mr. Negrelli in this case is probation or house arrest.  Mr. Negrelli is 64 years old, and a 3 year term of probation would insure that he does not violate the law again

and together, with his felony conviction the loss of his real estate license, would a

deterrence to others.

Respectfully submitted,

 S/ Jerome J. Froelich Jr.
Jerome J. Froelich, Jr.
State Bar No. 278150

McKENNEY & FROELICH
Two Midtown Plaza, Suite 1250
1349 West Peachtree Street
Atlanta, Georgia  30309-2920
(404) 881-1111

## CERTIFICATE OF SERVICE

This is to certify that I have this day served correct copy of the within and

foreground Defendant Negrelli's Objections To The Final Presentence Report with

the Clerk of Court using the CM-ECF system which will automatically send e-mail

notification of such filing to opposing counsel:

> Sally Quillian Yates, Esq.
> United States Attorney
> 600 United States Courthouse
> 75 Spring Street, SW
> Atlanta, Georgia 30303
>
> Kurt Erskine, Esq.
> Assistant United States Attorney
> United States Attorney's Office
> 75 Spring Street, SW
> Atlanta, Georgia 30303

> This 12th day of January , 2011.


> *S/Jerome J. Froelich Jr.*
> JEROME J. FROELICH, JR.
> Georgia State Bar No.  278150

McKenney & Froelich
Two Midtown Plaza, Suite 1250
1349 West Peachtree Street
Atlanta, Georgia  30309-2920
(404) 881-1111